Argued and submitted April 25, affirmed December 26, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRANDY MARRIE BADILLO,
*Defendant-Appellant.*

Wasco County Circuit Court
0900196CR; A146853

317 P3d 315

Shawn E. Wiley, Chief Deputy Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Duncan, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Defendant was arrested after she solicited a 17-year-old acquaintance and, several days later, two undercover state troopers to break into defendant's neighbors' home in The Dalles and kidnap their infant daughter. She was subsequently tried and convicted of attempted first-degree burglary and two counts of solicitation to commit second-degree kidnapping.[1] On appeal, she argues that the trial court erred in convicting her as an accomplice to attempted first-degree burglary, because no principal actually attempted to commit the crime. We reject that argument because we conclude that, in fact, the court did not convict her as an *accomplice* to attempted first-degree burglary; rather, it convicted her for attempting that crime herself. She also contends that the trial court failed to merge all of her guilty verdicts for inchoate crimes into a single conviction, as required under ORS 161.485(2),[2] because they were all "designed to commit or to culminate in commission of the same crime." We reject that argument because we conclude that it derives from an erroneous statutory interpretation. We therefore affirm.

The facts are undisputed. Defendant had long wanted a child, but she was unable to conceive. Instead, she devised an elaborate but improbable plan to kidnap her neighbors' child and pass the child off as her own. In late August of 2009, defendant approached a 17-year-old acquaintance who had once applied for a job at a restaurant that defendant had owned. Defendant asked the acquaintance if he was still interested in a job, explaining only that it was illegal, and involved "a kid, a gun, and $10,000." The youth declined the offer and told friends and family about the conversation.

---

[1] Several additional guilty verdicts were merged into one of the verdicts for solicitation to commit second-degree kidnapping: an additional verdict for solicitation to commit second-degree kidnapping, two counts of conspiracy to commit second-degree kidnapping, and attempted second-degree kidnapping. Defendant was acquitted of one count of attempted first-degree burglary with a firearm, three counts of solicitation to commit kidnapping with a firearm, two counts of criminal conspiracy with a firearm, one count of attempted second-degree kidnapping with a firearm, and eight counts of unlawful use of a weapon.

[2] ORS 161.485(2) provides,

"A person shall not be convicted of more than one offense defined by ORS 161.405 [attempt], 161.435 [solicitation] and 161.450 [conspiracy] for conduct designed to commit or to culminate in commission of the same crime."

They urged him to report the incident to The Dalles police, and he did so.

At police request and with their guidance, the youth called defendant and asked whether she was still looking for someone to do the job. Defendant responded that she was. The youth fabricated a story about a "cousin" in financial trouble who was interested in doing the job. Defendant told the youth that she had acquired the necessary guns and repeated that the job paid $10,000 and involved a baby girl. She also assured the youth that nobody would be hurt and that "hopefully the plan is not to put [any ammunition] in [the guns]." Defendant explained that the job had to be done in the next two weeks.

Shortly thereafter, Oregon State Trooper Jason Perrizo called defendant, identified himself as the youth's "cousin," and told her that he had arrived in town. Defendant arranged to meet Perrizo and another undercover trooper in a retail store parking lot. Once there, they began discussing the kidnap plan. Defendant provided the troopers with her neighbors' address, directions to and a description of their house, and the age of the baby. She provided $1,000 as down payment and promised to pay the remaining $9,000 upon completion, as well as another $2,000 if no one was hurt. When defendant handed the troopers a bag containing $1,000 cash and unloaded firearms, Perrizo asked her if she was sure she wanted to go through with the plan. She said that she was. At that point, uniformed officers entered the parking lot and arrested defendant. She eventually admitted to the scheme described above, explaining that she had devised the plan to fake a pregnancy and kidnap her neighbors' child a few months earlier. After a bench trial, defendant was convicted of, among other things, attempted first-degree burglary, solicitation of the youth to commit second-degree kidnapping, and solicitation of Perrizo to commit second-degree kidnapping.[3]

On appeal, defendant raises seven assignments of error addressing three rulings of the trial court: (1) the implicit denial of defendant's contention that there was not enough evidence to convict her of attempted first-degree

---

[3] *See* 260 Or App at 219 n 1 describing the other charges.

burglary;[4] (2) the decision not to merge the three remaining convictions; and (3) the imposition of departure sentences for each conviction based on facts not alleged in the indictment. The Oregon appellate courts have already rejected this last argument, and we do so again, without further discussion. *State v. Reinke*, 354 Or 98, 124, 309 P3d 1059, *adh'd to as modified*, 354 Or 570, 309 P3d 1059 (2013); *State v. Sanchez*, 238 Or App 259, 267, 242 P3d 692 (2010), *rev den*, 349 Or 654 (2011).

We turn, then, to defendant's assignments of error regarding the adequacy of evidence to support her conviction for attempted first-degree burglary. First, she argues that the trial court relied on an incorrect interpretation of the accomplice liability statute in convicting defendant; and, second, she argues that, under a correct interpretation, there was insufficient evidence to justify a conviction. The fatal flaw in defendant's first argument is that it is predicated on the erroneous premise that the trial court convicted her as an *accomplice* to attempted first-degree burglary. Based on that conclusion, defendant argues that the accomplice liability statute, ORS 161.155, unambiguously requires that the person who receives the accomplice's aid must actually commit the crime that is allegedly aided. Therefore, defendant reasons, because the undercover troopers never intended to enter the home and attempt a burglary, the state failed to establish a necessary element of accomplice liability. However, defendant mistakes the trial court's basis for convicting her of attempted first-degree burglary. As the state contends, the prosecution of defendant for attempted burglary, and the trial court's rationale for finding her guilty of that charge, did not derive from her assistance to the undercover officers or the youth; rather, they were based on her own conduct. The prosecutor never advanced an argument based on accomplice liability, nor did the trial court indicate that it was basing its judgment on such a theory. In rendering its verdict on attempted first-degree burglary, the trial court stated,

---

[4] Because defendant was tried to the court, her contention in her closing argument that the state's evidence did not suffice to establish her guilt was the functional equivalent of a motion for a judgment of acquittal. *State v. Andrews*, 174 Or App 354, 358-59, 27 P3d 137 (2001).

> "I believe it has been proved beyond a reasonable doubt *that [defendant] attempted, by hiring others*, to enter into a dwelling place to kidnap a child and, of course, Attempted Burglary, no—excuse me. Let me address burglary requires that a person enter into a dwelling place with the intent to commit a crime in that dwelling place.
>
> "In this case, the dwelling place was the [neighbors'] home. The crime to be committed therein was kidnapping."

(Emphasis added.) The statement that defendant "attempted, by hiring others" to enter a dwelling to effect a kidnapping indicates that the trial court was proceeding on the basis of defendant's own conduct and found that her conduct constituted a "substantial step" to commit burglary.

That conclusion means that the validity of defendant's conviction depends on whether the evidence was sufficient to sustain a conviction for attempted first-degree burglary. We view the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). Oregon's criminal attempt statute, ORS 161.405(1), provides, "A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." Defendant does not dispute that she solicited two different people to enter into her neighbors' house to commit the crime of kidnapping therein. Therefore, the dispositive issue is whether those solicitations constitute a substantial step towards the commission of the crime.

This court considered that issue in *State v. Johnson*, 202 Or App 478, 123 P3d 304 (2005), *rev den*, 340 Or 158 (2006), where the defendant was convicted of attempted aggravated murder after he solicited another person to murder his wife. The defendant in *Johnson* argued that, as a matter of law, his solicitation could not constitute a substantial step under the attempt statute. In upholding the conviction, this court examined the relationship between Oregon's attempt and solicitation statutes, and concluded

that, contrary to the view in a majority of other jurisdictions, under Oregon law, "[s]olicitation *** qualifies as a 'substantial step' if, under the facts, the defendant's actions exceed mere preparation, advance the criminal purpose charged, and provide some verification of the existence of that purpose." *Id.* at 489 (citing *State v. Jessen*, 162 Or App 662, 668, 986 P2d 684 (1999), *rev den*, 329 Or 589 (2000)).

We conclude that a rational trier of fact in this case could find that defendant's conduct constituted a substantial step toward committing first-degree burglary. It is undisputed that defendant solicited Perrizo to break into her neighbors' home to kidnap their infant daughter. A rational trier of fact could find that defendant's solicitation served to advance her criminal purpose of breaking into her neighbors' house to commit the crime of kidnapping therein. A rational trier of fact could similarly find that defendant's solicitation verified her criminal purpose: She told Perrizo that she was sure that she wanted to pursue the burglary and she paid him $1,000 to perform the burglary. She also gave him directions to the house, a description of the infant, and guns to commit the crime. Finally, a rational trier of fact could find that defendant's solicitation exceeded mere preparation. *See State v. Sargent*, 110 Or App 194, 198, 822 P2d 726 (1991) ("[I]f a person solicits another to engage in conduct constituting an element of the crime of delivery, *** the person has taken a substantial step toward committing the crime of attempted delivery ***."). Accordingly, we reject defendant's first and second assignments of error and affirm the trial court's judgment of conviction for attempted first-degree burglary.

Defendant next advances several assignments of error relating to the trial court's decision not to merge her guilty verdicts for the three inchoate crimes for which she received sentences into a single conviction.[5] She argues that the trial court was required to merge all of her guilty

---

[5] To recount, defendant was convicted of attempted burglary, soliciting the youth to commit kidnapping, and soliciting Perrizo to commit kidnapping, in addition to four other inchoate crimes. At sentencing, the trial court merged the guilty verdicts on the four additional inchoate crimes into the guilty verdict on the soliciting Perrizo count, but did not merge the guilty verdict on that count and the other two. *See* 260 Or App at 219 n 1.

verdicts for inchoate crimes under ORS 161.485(2), which provides:

> "A person shall not be convicted of more than one offense defined by ORS 161.405 [attempt], 161.435 [solicitation] and 161.450 [conspiracy] for conduct designed to commit or to culminate in commission of the same crime."

Defendant argues that the statute's prohibition of multiple convictions for inchoate crimes "designed to * * * culminate in commission of the same crime" applies to her guilty verdicts because each inchoate crime was designed to perpetrate the same primary crime: the kidnapping of her neighbors' infant daughter. At the very least, defendant contends, the verdicts on the two solicitation charges should have merged because, plainly, solicitation to commit kidnapping is the same crime as solicitation to commit kidnapping.

In response, the state argues that none of the guilty verdicts merge. First, the state contends that the attempted-burglary verdict does not merge with the verdict on solicitation to commit kidnapping; burglary and kidnapping are not the same crime, because one can commit kidnapping without entering the dwelling of another to do so. Defendant could have kidnapped the infant from a public place. Second, the state contends that the two solicitation verdicts do not merge because defendant's solicitations of the youth and, several days later, of Perrizo, represent conduct designed to culminate in *different "commission*[s] of the same crime." ORS 161.485(2) (emphasis added). According to the state, defendant solicited two commissions—the commission of kidnapping by the youth and the commission of kidnapping by Perrizo.

We review the trial court's rulings on merger issues for errors of law. *State v. Colmenares-Chavez*, 244 Or App 339, 342, 260 P3d 667, *rev den*, 351 Or 216 (2011). First, we reject defendant's argument that the attempted first-degree burglary verdict should have been merged with the verdicts on the two solicitations of second-degree kidnapping. As the state points out, it was possible to kidnap the infant without also committing a burglary by, for example, taking the infant from a public place or by means of deception. Therefore, defendant's convictions for attempted burglary

and for solicitation of kidnapping are directed at committing different crimes. Defendant's argument would have us replace the words "same crime" with "same criminal objective." That we cannot do.

Determining whether defendant's guilty verdicts on the two solicitation counts should have been merged is a closer question. At the outset, we note that defendant is correct that both of the solicitations were aimed at completing the "same crime," namely the kidnapping of the neighbors' infant. However, we are persuaded by the state's argument that defendant's multiple solicitations present multiple *commissions* of the crime. The state notes that the identity of the person solicited is an element of solicitation "that the state *must* prove to establish the crime charged." *State v. Reynolds*, 183 Or App 245, 249, 51 P3d 684, *rev den*, 335 Or 90 (2002) (emphasis in original). The text of the solicitation statute, ORS 161.435(1), reads:

> "A person commits the crime of solicitation if with the intent of causing *another* to engage in specific conduct constituting a crime * * * the person commands or solicits *such other person* to engage in that conduct."

(Emphases added.) The statutory language indicates that a criminal solicitation encompasses the solicitation of a specific person ("another" or "other person") to commit an ultimate crime. As we noted in *Johnson*, "[t]he statute itself specifies that the *mens rea* of solicitation is the 'intent of causing *another* to engage in specific conduct constituting a crime * * *.'" 202 Or App at 484 (quoting ORS 161.435(1)) (ellipses in original; emphasis added). Here, there were two "another[s]"; hence, defendant solicited two commissions of kidnapping by "such other person[s]." Put another way, the "commission of the same crime," refers to a single act by an individual actor, so the solicitation of two different people implies two individual "acts" or "commissions" by the respective solicited parties and, therefore, the solicitation of the commission of two different crimes by the solicitor.

Our review of the legislative history of ORS 161.485(2) discloses nothing that would detract from or alter our interpretation of the statute's text. Rather, that history reveals that the drafters adopted the statute to address the

problem of potential multiple convictions when a person commits solicitation, attempt, and conspiracy in one course of conduct, and did not intend the statute to apply to multiple convictions for the *same* inchoate crime. ORS 161.485(2), like the criminal solicitation statute, was added to the Oregon Criminal Code of 1971 by the Criminal Law Revision Commission. Or Laws 1971, ch 743, § 64; *see* ORS 161.005 (identifying provisions of the Oregon Revised Statutes that may be cited as the "Oregon Criminal Code of 1971"). The commission was aware that a defendant could be prosecuted for multiple inchoate crimes based on a single course of conduct. At a hearing of the full committee, Professor Platt explained that, as an example of the type of case that ORS 161.485 would cover, an individual could be prosecuted in the same case for solicitation to a bank robbery, attempt of the same bank robbery, or conspiracy of the same bank robbery, in addition to the bank robbery itself. However, they could be convicted only for the completed crime or for one of the three inchoate crimes. Minutes, Criminal Law Revision Commission, Dec 13, 1969, 48.[6]

The commission also addressed this concern in its final report. In summarizing the newly created solicitation statute, the commission observed that, if a person solicited another to commit a crime, and then the solicitee attempted to complete the substantive crime, the solicitor would be guilty of the solicitation, as well as an attempt on the basis of criminal complicity. Minutes, Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 57, 56 (July 1970) (Final Draft and Report). However, the commission clarified that, under ORS 161.485, the solicitor "could not be convicted of more than one inchoate offense relating to the same contemplated crime." *Id.* Similarly, the commission noted in the same summary that, even where the crime contemplated could not be completed because of a legal impossibility, the solicitor would nonetheless face criminal liability for an attempt in addition to solicitation. The commission then reiterated that, in such a circumstance, the person "could be prosecuted for both solicitation and attempt and could be convicted of either *but*

---

[6] This portion of the December 13, 1969, committee session was not recorded; the minutes are the only archived record of this testimony.

*under the policy of [ORS 161.485]*, could not be convicted of both the inchoate offenses." *Id.* (emphasis added).

The commission summarized ORS 161.485(2) as

"reflect[ing] the policy, frequently stated in these comments, of finding the evil of preparatory action in the danger that it may culminate in the substantive offense that is its object. *Thus conceived, there is no warrant for cumulating convictions of attempt, solicitation and conspiracy to commit the same offense.*"

Final Draft and Report § 64, 66 (emphasis added). Taken together, these examples provide evidence that the commission intended ORS 161.485(2) to prevent multiple convictions for attempt, solicitation, and conspiracy on the basis of a defendant's single course of conduct, as opposed to preventing multiple convictions for multiple instances of one or another of the inchoate crimes.[7] We understand that this legislative history does not positively support the theory that the statute could *not* be interpreted to require merger for a defendant's solicitations of multiple solicitees. Our point, rather, is that the history does not suggest that our interpretation is suspect.

Nor does the case law surrounding ORS 161.485(2). Defendant cites *State v. Gonzales-Gutierrez*, 216 Or App 97, 171 P3d 384 (2007), *rev den*, 344 Or 194 (2008), for the proposition that this court has previously merged guilty verdicts for multiple solicitation crimes where the defendant solicited multiple people to commit the same crime. Defendant argues, "[I]t is clear that the defendant solicited at least two persons to commit the murders, * * * and that he had several phone conversations with the undercover officer over a period of time." Ultimately, defendant states, this court held that all of the guilty verdicts should merge into a single conviction for each victim. However, a careful reading of *Gonzales-Gutierrez* reveals that this court did not merge guilty verdicts on multiple solicitations (or multiple counts of conspiracy or attempts) under ORS 161.485(2). Instead,

---

[7] In fact, that precise outcome was avoided in this case. Defendant was convicted of four other inchoate crimes for her conduct, including conspiracy to commit second-degree kidnapping and attempted second-degree kidnapping, but those convictions were ultimately merged into the conviction for *solicitation* to commit second-degree kidnapping at sentencing.

this court merged guilty verdicts of attempt, solicitation, and conspiracy to commit the aggravated murder and murder, which were based on the same conduct, under ORS 161.485(2). *Id.* at 110. In *Johnson*, this court noted:

"'The majority rule that solicitation generally cannot amount to an attempt was possibly driven by the concern that the *same act* could expose a defendant to multiple prosecutions. Under the current law, however, that concern is addressed by ORS 161.485(2), which prohibits multiple convictions for inchoate crimes 'designed to commit or to culminate in commission of the same [substantive] crime.'"

202 Or App at 489 n 5 (bracketed material in original; emphasis added). The court presumed that ORS 161.485(2) was designed to prevent one act from serving as a basis for liability under the attempt, solicitation, and conspiracy statutes. By contrast, in this case, there were two distinct acts separated by several days that served as the basis of the two solicitation convictions.

In sum, we conclude that the state presents a better argument regarding merger of the guilty verdicts on the two solicitation offenses. We agree that the person solicited is a material element of solicitation and that the solicitation statute contemplates the commission of the crime by the person solicited. Consequently, defendant's solicitation of two different people several days apart was designed to culminate in *separate commissions* of kidnapping: First, the commission of the kidnapping by the 17-year-old; and second, the commission of the kidnapping by Perrizo. Therefore, we affirm the trial court's decision not to merge the two solicitation convictions.[8]

Affirmed.

---

[8] Defendant's solicitations would not merge under ORS 161.067(3), the antimerger statute that applies to noninchoate crimes, because they were "separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."