Submitted March 29, convictions on Counts 7, 8, and 9 reversed, convictions on Counts 5 and 6 reversed and remanded for entry of a single conviction, remanded for resentencing, otherwise affirmed May 11, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MOHDSIDEK HABIBULLAH,
*Defendant-Appellant.*

Multnomah County Circuit Court
130632768; A157003

373 P3d 1259

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Erica Herb, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

## SERCOMBE, P. J.

Following a trial to the court, defendant was convicted of attempted aggravated murder (Count 1), attempted murder (Count 4), solicitation to commit murder (Count 5), conspiracy to commit murder (Count 6), solicitation to commit fourth-degree assault (Count 7), conspiracy to commit fourth-degree assault (Count 8), and solicitation to commit third-degree robbery (Count 9). Defendant appeals the judgment of conviction, raising several assignments of error. As explained below, we reverse the convictions on Counts 7, 8, and 9, reverse and remand Counts 5 and 6 for entry of a single conviction, remand for resentencing, and otherwise affirm the judgment of the trial court.

The convictions in this case arose from the following circumstances. Defendant and his business partner, M, owned and operated a convenience store together in Portland. In 2013, defendant offered T, an acquaintance and regular customer at the convenience store, several hundred dollars to "[b]eat *** up" a man defendant believed had impregnated his daughter. In addition, defendant instructed T to attempt to take the man's cell phone and to tell the man to leave town. Although T twice attempted to find the man, he was unable to do so.

Shortly thereafter, defendant changed his focus, telling T that he no longer needed him to carry out the assault because defendant "had a bigger problem." Specifically, defendant wanted T to assist him in killing M. Defendant told T that M was stealing money from the business and, in May 2013, defendant agreed to pay T $60,000 to help with the killing.

Over the next several weeks, defendant and T discussed methods of killing M and, eventually, they settled on shooting M in the head. T advised defendant not to use his own gun and said that he would get a different gun that they would dispose of after the killing. Defendant planned that he would leave the back door of the convenience store unlocked so that T could enter the store. Defendant would hide in a storeroom while T held M at gunpoint. Defendant would then come out of hiding and kill M. Defendant paid T

$300 for a gun that T purchased and $800 for a car that was to be used to dispose of the body.

In June 2013, T contacted M and informed him of defendant's plan to kill him. M was initially skeptical of T's story. After further conversation with T, M asked him to obtain proof of defendant's plan so that they could report it to the police. T agreed and, accordingly, brought a recording device to a meeting with defendant on June 11, 2013. During their recorded conversation, defendant said that he wanted to kill M the following day. He also made arrangements to get the gun and car from T.

T and M took the recording to the police. After reporting the murder plan, T agreed to wear a "police wire" the next day while meeting with defendant. During that meeting, on June 12, 2013, defendant confirmed the plan to kill M and stated that he planned to carry it out the following evening. Having monitored and recorded the conversation between defendant and T, police arrested defendant.

As noted, the case was tried to the court, which ultimately entered a judgment convicting defendant of attempted aggravated murder (Count 1), attempted murder (Count 4), solicitation to commit murder (Count 5), conspiracy to commit murder (Count 6), solicitation to commit fourth-degree assault (Count 7), conspiracy to commit fourth-degree assault (Count 8), and solicitation to commit third-degree robbery (Count 9).

Defendant contends that the trial court erred when it denied his motions for judgment of acquittal on Counts 7, 8, and 9.[1] Those three counts related to defendant's plan

---

[1] Although defendant did not raise formal motions for judgment of acquittal on those charges, in his closing argument to the court, he asserted that the state had failed to present sufficient evidence to support a finding of guilt on Counts 7, 8, and 9, because the evidence for those charges was based solely on the uncorroborated testimony of T, who was an accomplice. The parties agree that that argument was the functional equivalent of a motion for judgment of acquittal. *See State v. Gonzalez-Valenzuela*, 358 Or 451, 454 n 1, 365 P3d 116 (2015) (in a bench trial, defendant's closing argument challenging the sufficiency of the evidence was the equivalent of a motion for judgment of acquittal); *State v. Gonzalez*, 188 Or App 430, 431, 71 P3d 573 (2003) (in a bench trial, when a defendant argues during closing argument that the state failed to adduce sufficient evidence for conviction, that argument is "the equivalent of a motion for judgment of acquittal").

to have T beat up and steal the cell phone of the man whom defendant believed had impregnated his daughter. Defendant asserts that, under ORS 136.440, to obtain a conviction, the state had to present evidence, other than the testimony of an accomplice, that tended to connect defendant with the commission of the offense.[2] According to defendant, in support of those counts, the state offered only the testimony of T, who was an accomplice as a matter of law. The state agrees that T "was an 'accomplice' as that term is used in ORS 136.440" and that the record contains no evidence corroborating his testimony relating to Counts 7, 8, and 9. Accordingly, the state concedes that it failed to meet the requirements of ORS 136.440 and that defendant was entitled to an acquittal on Counts 7, 8, and 9. We agree and accept the state's concession. Thus, we reverse defendant's convictions on Counts 7, 8, and 9.[3]

Defendant also argues that the trial court erred in failing to merge the guilty verdicts for Counts 5 and 6, solicitation and conspiracy to commit murder, into the conviction for Count 1, attempted aggravated murder. In the alternative, defendant asserts that the trial court should have merged the guilty verdicts for Counts 5 and 6 "into a single conviction for either solicitation or conspiracy to commit murder." Although he did not raise those issues before the trial court, he urges that we should address them as plain error. See ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was

---

[2] ORS 136.440 provides:

"(1) A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances of the commission.

"(2) As used in this section, an 'accomplice' means a witness in a criminal action who, according to the evidence adduced in the action, is criminally liable for the conduct of the defendant under ORS 161.155 and 161.165, or, if the witness is a juvenile, has committed a delinquent act, which, if committed by an adult, would make the adult criminally liable for the conduct of the defendant."

[3] That conclusion obviates the need to address defendant's seventh assignment of error, in which he contends that the trial court plainly erred in failing to merge Counts 7 and 8 into a single conviction for solicitation or conspiracy to commit fourth-degree assault.

preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may consider an error of law apparent on the record.").

The state responds, first, that the trial court did not plainly err in failing to merge Counts 5 and 6 into the conviction for Count 1. According to the state, ORS 161.485(2)[4] does not compel merger of Counts 5 and 6 into Count 1 "because Count 1 represents a different commission of a crime than do Counts 5 and 6." According to the state,

"[a]s to Count 1, the indictment alleged that 'on or about May 11, 2013' defendant committed the crime of attempted murder by intentionally soliciting and agreeing to pay [T] to murder [M]. [T] testified that, at that time, defendant approached him about murdering [M] and agreed to pay him $60,000 for the crime. As to Counts 5 and 6, the indictment alleged that those crimes—solicitation to commit murder and criminal conspiracy to commit murder— occurred 'on or about June 12, 2013[.]' [T] testified that, at that time, defendant met with him, paid him for the gun to be used in the murder and for a car to be used in concealing the crime, and set out the plan to carry out the murder the following evening. Because those crimes were committed on different days approximately a month apart, they were designated to culminate in separate commissions of a crime."

(Sixth brackets in original; internal citations omitted.) The state emphasizes that the issue is whether the trial court *plainly* erred and, according to the state, in light of our holding in *State v. Badillo*, 260 Or App 218, 317 P3d 315 (2013), and the lapse of time between defendant's acts that constitute separate conduct, it cannot be said that any error "is obvious or not reasonably in dispute." However, with respect to defendant's alternative argument, the state concedes that, under ORS 161.485(2), the trial court plainly erred when it failed to merge Counts 5 and 6 into a single conviction.

For the reasons articulated by the state, we agree that, under the circumstances of this case, any error in

---

[4] Pursuant to ORS 161.485(2), "A person shall not be convicted of more than one offense defined by ORS 161.405, 161.435 and 161.450 for conduct designed to commit or culminate in commission of the same crime."

failing to merge Counts 5 and 6 into Count 1 is not plain. We further agree with and accept the state's concession that the trial court plainly erred under ORS 161.485(2) in failing to merge Counts 5 and 6 into a single conviction. Furthermore, considering the interests of the parties, the gravity of the error, and the ends of justice, we conclude that it is appropriate to exercise our discretion to correct the error. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991) (among factors court may consider in deciding whether to exercise discretion to correct plain error are "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way").

Convictions on Counts 7, 8, and 9 reversed; convictions on Counts 5 and 6 reversed and remanded for entry of a single conviction; remanded for resentencing; otherwise affirmed.