[J-61-2015] [M.O. - Wecht, J.]

## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 45 MAP 2015 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court at No. 2016 MDA 2012 dated |
| | : | October 29, 2014, reconsideration |
| v. | : | denied January 8, 2015, which |
| | : | Affirmed/Vacated/Remanded the order |
| | : | from the Bradford County Court of |
| SCOTT BRADLEY KINGSTON, | : | Common Pleas, Criminal Division, at |
| | : | No. CP-08-CR-0000735-2009 dated |
| Appellee | : | October 22, 2012. |
| | : | |
| | : | SUBMITTED:  August 31, 2015 |

## DISSENTING OPINION

**CHIEF JUSTICE SAYLOR**                                **DECIDED:  August 15, 2016**

The majority holds that Section 906's prohibition against convictions "of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime" operates only *horizontally*, *i.e.*, to foreclose convictions for combinations of different inchoate crimes, but not *vertically* to preclude convictions for multiple instances of any one of the named inchoate offenses.  18 Pa.C.S. §906.  From my point of view, the statute is materially ambiguous in such regard, and accordingly, the rule of lenity should be applied to enforce horizontal *and* vertical preclusion.

In its reasoning rejecting vertical preclusion, the majority first states that acceptance of such proscription "would require us to privilege the unspoken 'counts' over the express enumeration of distinct inchoate offenses."  Majority Opinion, *slip op.*

at 10.  In point of fact, however, no such privileging is required, since extension of a rule of preclusion across the two categories which are facially encompassed within the statute simply is not an either-or proposition.  Along these lines, I also do not see what is added through the observation that the Crimes Code may otherwise frequently speak in terms of "counts" or "violations."  *See id.* at 10-11.  Straightforwardly, a crime is simply a violation of the law, *see* BLACK'S LAW DICTIONARY (17th ed. 1999); *accord* 18 Pa.C.S. § 106, so that the use of the terms "violation," versus "count," versus "crime" would seem to me to be immaterial.  Accordingly, the answer to the majority's defining question – "[m]ore than one what?" – seems apparent.  Majority Opinion, *slip op.* at 12. Section 906 bars convictions of more than one crime or crimes in the delineated circumstances.

The majority also finds the Legislature's use of the term "crimes" in Section 906, as opposed to "crime" to be clarifying.  *See* Majority Opinion, *slip op.* at 11-12.  From my point of view, again, little grammatical difference arises out of the use of the plural form, and certainly not one so great as to remove the manifest ambiguity from the statute.

In terms of the policy, it seems to me that the Legislature may have contemplated both horizontal and vertical preclusion to mitigate some of the conceptual difficulties surrounding inchoate offenses by curtailing their proliferation in association with a single object crime.[1]  Notably, and in all events, the Sentencing Code has been structured to allow a range of serious penalties and to afford sentencing courts discretion to consider various factors, which would include whether there may have been multiple acts or

---

[1] As an example of the difficulty arising out of the litigation of multiple inchoate crimes, in the present case the Commonwealth was required to forego one of the conspiracy convictions given that the relevant offense had mistakenly been characterized as solicitation on the jury verdict slips deriving from the nineteen charged, interwoven, and substantially overlapping inchoate crimes.  *See* N.T., May 17, 2010, at 3.

instances of solicitation, for example. In Appellee's case, the status of solicitation of perjury as a third-degree felony (carrying a maximum prison sentence of seven years, *see* 18 Pa.C.S. §1103(3)), and solicitation of hindering prosecution as a misdemeanor of the second degree (implicating a maximum sentence of two years, *see id.* §1104(2)), would have left Appellant exposed to an aggregate maximum sentence of at least eighteen years' imprisonment arising out of his various efforts to thwart his prosecution for DUI,[2] even assuming that vertical preclusion would apply. *See generally Commonwealth v. Hoke*, 599 Pa. 587, 594, 962 A.2d 664, 668 (2009) (explaining that inchoate crimes have the same maximum sentences as the underlying crime, per Section 905(a) of the Crimes Code, 18 Pa.C.S. §905(a)).[3]

I recognize that the majority's construction of Section 906 is consistent with the approach of some other courts, *see, e.g.*, *State v. Badillo*, 317 P.3d 315, 320 (Or. Ct. App. 2013), and, in fact, may reflect the more likely underlying objective of the drafters of the Model Penal Code who originally formulated the proscription. *See* AMERICAN LAW

---

[2] In this regard, Appellee was also convicted of conspiracy to solicit another person (Steven Boller) to solicit Mroz to hinder the prosecution and commit perjury.

Parenthetically, while these sorts of double inchoate offenses may implicate conceptual legal questions in their own right, *see, e.g.*, Ira P. Robbins, *Double Inchoate Crimes*, 26 HARV. J. ON LEGIS. 1 (1989), Appellee has not challenged these conspiracy convictions on such terms.

[3] In this respect, I note that the Commonwealth already has had the benefit of the Legislature's allowance for multiple, factually-overlapping crimes (solicitation of hindering prosecution and solicitation of perjury), arising out of the same conduct.

I would also not rule out that some of Appellee's acts may have been directed toward separate crimes, *i.e.*, variously, to incite his father, his mother, and Ms. Mroz to commit perjury. *See generally Commonwealth v. Jacobs*, 614 Pa. 664, 674, 39 A.3d 977, 983 (2012) (plurality) (discussing the "narrow view of the object crime" taken by the Court in past decisions). In this respect, I note only that the present appeal has not been framed in a way that requires sifting through fact-bound matters of this sort.

INSTITUTE, PROPOSED OFFICIAL DRAFT OF THE MODEL PENAL CODE §5.05(3) (1962). Nevertheless, left to my own devices, in the face of these sorts of material ambiguities in statutes implicating substantial criminal liabilities, I favor more consistent application of the rule of lenity, thus leaving it to the Legislature to make its intentions plain and explicit to the degree that it favors more punitive approaches. *Accord, e.g.*, *Commonwealth v. Booth*, 564 Pa. 228, 234, 766 A.2d 843, 846 (2001) (explaining that, "where ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused" (citing *Commonwealth v. Wooten*, 519 Pa. 45, 53, 545 A.2d 876, 879 (1988))).[4] In this vein, I regard some of the courts' efforts to draw firm conclusions from ambiguous language to be problematic in their own right.

For the above reasons, I would affirm the order of the Superior Court.

---

[4] I acknowledge that there is a trend toward diluting the rule of lenity. *See, e.g.*, *Muscarello v. United States*, 524 U.S. 125, 138-39, 118 S. Ct. 1911, 1919 (1998) (indicating that the rule applies only when a criminal statute contains a "grievous ambiguity or uncertainty," and "only if, after seizing everything from which aid can be derived," the Court "can make 'no more than a guess as to what Congress intended'" (citations omitted)). For my own part, given the substantial liberty interests involved, I remain a closer adherent to the more traditional formulations. *See, e.g.*, *United States v. Wiltberger*, 18 U.S. 76, 105 (1820) ("[P]robability is not a guide which a court, in construing a penal statute, can safely take.").