Submitted February 9, 2016, affirmed April 26, petition for review allowed October 5, 2017 (362 Or 38)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DUSTIN KIMBROUGH,
*Defendant-Appellant.*

Wasco County Circuit Court
1200238CR; A157030

395 P3d 950

Ernest G. Lannett, Chief Defender, Criminal Appellate Section, and Meredith Allen, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Peenesh H. Shah, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

## TOOKEY, J.

Defendant appeals a judgment convicting him of nine crimes, contending that the trial court erred in denying his motion for judgment of acquittal and entering convictions on four counts of attempted aggravated murder (Counts 1 through 4), three counts of attempted murder (Counts 5 through 7), and two counts of tampering with a witness (Counts 15 and 16).[1] Defendant argues that the trial court erred in denying his motion for judgment of acquittal on those counts, because defendant did not take a substantial step toward the commission of each of those crimes, and thus cannot be guilty of attempt. For the reasons that follow, we affirm.

In reviewing a trial court's denial of a defendant's motion for judgment of acquittal, "[w]e view the evidence in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998).

Defendant was incarcerated pending prosecution on a burglary charge. Defendant became cellmates with another inmate, Crowley. Defendant told Crowley that defendant "wanted his witnesses [to his burglary case] to not show up to trial," and that "he wanted people dead." Specifically, defendant mentioned his father-in-law, brother-in-law, and the Wasco County District Attorney. Defendant asked Crowley whether Crowley knew of anyone who had killed a person before. Crowley responded, "Yeah, I have. I mean, I've been to prison. I mean, I know people that have killed people." Defendant asked whether Crowley "could have somebody killed" and Crowley responded affirmatively. In fact, Crowley did not know of such a person. After hearing that Crowley "might know somebody that could

---

[1] The trial court also found defendant guilty of four counts of attempted solicitation of aggravated murder and three counts of attempted solicitation of murder. The court merged all of the guilty verdicts into the nine convictions listed above. Defendant's arguments on appeal relate only to the attempted murder, attempted aggravated murder, and witness-tampering counts; he does not challenge the verdicts on the solicitation counts.

do something," defendant began "writing stuff," including writing people's names. Within hours, Crowley sent several inmate request forms to jail staff, asking to speak to detectives because "someone could get hurt." Sergeant Birchfield visited Crowley, and Crowley told Birchfield what defendant had said.

When Crowley returned to his cell, defendant was writing a letter. According to Crowley, defendant "wrote out a couple letters, and he wanted to get it perfect. His detail about it had to be perfect." When defendant finished writing the letter, he gave it to Crowley to read, then put the letter in an envelope, placed it underneath his mattress, and asked Crowley if he was a cop. The next morning, defendant gave Crowley the envelope. Defendant believed that Crowley would "put [the envelope in Crowley's personal] property" and release it to someone outside the prison "so that a hit man could get it for [defendant] and take care of what he wanted [taken] care of."[2] The envelope contained a map of defendant's father-in-law's house and a letter stating:

"Dear stranger,

"I have a job for you. I need your help. There are three people I need taken care of. First one is my father-in-law. * * * Second is my brother-in-law. * * * The third is the D.A. (District Attorney). He is a piece of shit, and tears families apart. He is just as crooked as the cops in this town. * * * [My father-in-law] is leaving town October 15 for two [and a] half weeks. [Father-in-law]- Age 64 - address * * * - health - bad - has had a [triple] bypass 15 years ago - takes handful of pills a day. (Dead) Net worth 150,000 to 200,000 dollars + life insurance policy. Not sure [of the] value.

"[Brother-in-law] - Age 36 - address - halfway house in Oregon or Washington/Life insurance 100,000 to 150,000. He is a recovering meth addict. Liked doing his meth through a [syringe]. (Dead)

"D.A. (District Attorney) - [first and last name] - Age 40s - (Dead) [Oregon State Bar Number].

---

[2] The captain at Northern Oregon Regional Correction Facility (NORCOR) testified that an inmate can release his personal property to a person outside of the prison.

"Witnesses in my and my wife's Burg I case. I just want them threatened.

"1) [Witness's name, address, telephone number, and date of birth]

"2) [Witness's name, address, telephone number, and date of birth]

"There are three safes in the house. I want you to get the stuff out of the safe. You can hang on to the stuff in the safe until you are [paid]. * * *

"Stuff in safes: 1) guns 2) car titles/ 1968 Dodge Charger RT/value 150,000 easy 3) jewelry 4) life insurance 5) money.

"Final bill = 80,000 I will be paying you. [Father-in-law]- Natural death - heart attack. [Brother-in-law]- Drug OD. DA-Your choice.

"How I would like it to look."

(Underscoring in original.) After giving Crowley the envelope with the letter, defendant repeatedly asked Crowley, "Are they coming yet? Are they coming yet? Is he going to do it yet? Why ain't this done yet?"

Shortly thereafter, defendant and Crowley were placed in separate isolation cells across the hall from one another. Defendant and Crowley exchanged handwritten notes by using strings to fling cylinder-shaped papers into one another's cells. Defendant wrote, "Any idea when dude is coming man? I decided I'm not going to let DA tear me and my family up." Crowley responded, "I'll give you his name [when] I get it then you can go to visit and give him the hit that way [you're] face to face with the killer and he can talk to you and say what[']s up." Defendant wrote, "Ok that sounds good to me. Just got [to] let me know the day [and the] name so I can put the person on my visitors list."

In another exchange, Crowley asked defendant whether defendant still wanted the district attorney killed even though the district attorney has a family. Defendant responded, "Hell yeah, I can deal with it. Remember toes

pointing up to the clouds." Crowley saved the notes that he received from defendant and gave them to jail staff.

Defendant was charged with four counts of attempted aggravated murder, three counts of attempted murder, four counts of solicitation of aggravated murder, three counts of solicitation of murder, and two counts of tampering with a witness. Defendant tried his case to the court. After the state rested, defendant moved for a judgment of acquittal as to the four counts of attempted aggravated murder, three counts of attempted murder, and two counts of tampering with a witness. Defendant argued that the state failed to present sufficient evidence that defendant engaged in conduct constituting a substantial step towards the commission of the charged crimes, as required by ORS 161.405. The trial court denied defendant's motion for judgment of acquittal and found defendant guilty of the attempted aggravated murder, attempted murder, and tampering with a witness counts. As to the solicitation counts, the trial court found defendant guilty of attempted solicitation.

On appeal, defendant contends that the trial court erred by denying his motion for judgment of acquittal on the counts of attempted aggravated murder, attempted murder, and tampering with a witness. Defendant renews his argument that he did not take a substantial step toward the commission of the crimes of aggravated murder, murder, and tampering with a witness. According to defendant, he "did not meet with a purported 'hit man,' he did not engage in detailed planning, and he did not pay money or arrange to pay money," and therefore his conduct was insufficient to satisfy the substantial step element of his attempt convictions and his convictions for tampering with a witness.[3] Defendant contends that "[h]is desire to meet with someone to make a plan is not a plan in itself, much less a substantial step toward the commission of the objective." In response, the state argues that defendant's conduct was "more than enough to amount to a substantial step."

---

[3] Because defendant was convicted on Counts 15 and 16 for "knowingly induc[ing] or *attempt[ing] to induce* a witness or a person the person believes may be called as a witness in any official proceeding to offer false testimony or unlawfully withhold any testimony," his witness-tampering convictions also required that his conduct constitute a substantial step toward that result. ORS 162.285(1)(a) (emphasis added).

As noted above, our task is to determine "whether a rational trier of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt." *Hall*, 327 Or at 570. We begin with the text of ORS 161.405(1), which provides that "[a] person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." In *State v. Walters*, 311 Or 80, 85, 804 P2d 1164, *cert den*, 501 US 1209 (1991), the Supreme Court observed that "ORS 161.405 codifies the Model Penal Code's 'substantial step' test for distinguishing acts of preparation from an attempt." (Footnote omitted.)

To constitute a substantial step, a "defendant's conduct must (1) advance the criminal purpose charged and (2) provide some verification of the existence of that purpose." *Id.* "Under that standard, an attempt * * * must be established by conduct that is corroborative of the actor's criminal purpose." *State v. Carlton*, 361 Or 29, 45, 388 P3d 1093 (2017). "[T]he same conduct may constitute a substantial step toward the commission of more than one charged crime, as long as that conduct strongly corroborates the actor's criminal purpose underlying each charged crime." *Walters*, 311 Or at 86 n 9. There is no special rule regarding whether a solicitation is also an attempt: "[U]nder Oregon law, '[s]olicitation * * * qualifies as a "substantial step" if, under the facts, the defendant's actions exceed mere preparation, advance the criminal purpose charged, and provide some verification of the existence of that purpose.'" *State v. Badillo*, 260 Or App 218, 223, 317 P3d 315 (2013) (quoting *State v. Johnson*, 202 Or App 478, 489, 123 P3d 304 (2005), *rev den*, 340 Or 158 (2006) (second brackets in *Badillo*)).

Viewing the evidence in the light most favorable to the state, we conclude that a reasonable factfinder could determine that defendant's conduct constituted a substantial step toward the commission of the murders of his father-in-law, brother-in-law, and the Wasco County District Attorney. As recounted above, defendant told Crowley that he "wanted people dead," specifically mentioning his father-in-law, brother-in-law, and the Wasco County District Attorney.

Defendant then asked Crowley whether Crowley "could have somebody killed." When Crowley answered in the affirmative, defendant carefully composed a letter to an unknown "hit man" that set out the details of his intended murders. Then, defendant gave the letter to Crowley for the purpose of delivering it to the purported hit man. Finally, defendant inquired of Crowley why the murders were not "done yet." As the trial court explained,

> "With regard to advancing the purpose, it's very clear from the content of the letter that the Defendant gave great consideration to the details of the offenses. And had he just sat around and thought about that, \*\*\* we'd have no offense here. But he did the next step of writing it all down. And then he went beyond that, delivering it to a third person with the intent that it be carried out, believing that that third person had a relationship with individuals that could carry it out. And he actively inquired about the progress of the events related to his letter."

Defendant's contention that his "desire to meet with someone to make a plan is not a plan in itself," mischaracterizes the evidence. Indeed, viewed in the light most favorable to the state, the evidence shows that defendant advanced his criminal purpose by seeking out a hit man, and writing and delivering the letter to Crowley, with the intention that Crowley deliver the letter to the hit man; as a result, defendant believed that the letter alone would result in the murders of his father-in-law, brother-in-law, and the district attorney. As the trial court noted, defendant's letter provided detail with regards to whom he wanted killed, how he wanted them killed, and how the hit man would be compensated, and after delivering the letter to Crowley, defendant repeatedly asked why the murders had not taken place. To explain why the murders were not committed promptly, Crowley later told defendant that the hit man would visit defendant to finalize the details of the murders. Before that point, however, a trier of fact could find that defendant believed that the letter alone would cause the hit man to commit the murders; indeed, defendant's actions exceeded mere preparation because defendant had done all that he could have done under the circumstances to cause the murders of his intended victims. *See State v. Taylor*, 47 Or 455,

459, 84 P 82 (1906) (holding that the defendant's actions exceeded mere preparation for purposes of attempt where "he had * * * done all that he was expected to do, and his felonious design and action was then just as complete as if the crime had been consummated" and that "failure to commit the crime was not due to any act of [the defendant], but to the insufficiency of the agencies employed for carrying out his criminal design"). Thus, defendant's actions advanced his criminal purpose in having his father-in-law, brother-in-law, and the district attorney murdered. Moreover, a reasonable factfinder could also conclude that that same evidence of defendant's conduct verified his criminal purpose. In that way, defendant's conduct was corroborative of his criminal purpose.

The facts in this case are similar to the circumstances in *Johnson*. In that case, the defendant solicited a woman he met in a public Internet chat room to kill his wife and daughter. 202 Or App at 481. The defendant reaffirmed his desire during "at least one" telephone conversation with the woman. *Id.* at 482. The defendant "described his house plan and mentioned that the sliding glass doorway to his wife's bedroom was not lockable. Further, he stated that it would be easy to continue down a hallway to shoot his daughter." *Id.* "A quid pro quo was discussed; once the plan was completed, [the] defendant stated, [the woman] would 'never want for anything.'" *Id.* Ultimately, the woman informed the police of the defendant's conversation with her, and the defendant was convicted of various counts of attempted aggravated murder, attempted murder, solicitation to commit murder, and solicitation to commit aggravated murder. *Id.* at 482-83. On appeal, we concluded that the defendant's conduct constituted a "substantial step" for the purposes of proving attempt because "ample evidence would permit a finding that [the] defendant solicited [the woman] to kill his wife and daughter. That solicitation, it could be concluded, served to advance defendant's criminal purpose—murdering his wife and daughter." *Id.* at 489.

Here, defendant's conduct was similar to the defendant's conduct in *Johnson*. It is immaterial that, there, the defendant successfully solicited the woman to kill his wife

and daughter, whereas here, defendant's attempt to solicit the hit man failed because the hit man did not exist. As defendant concedes, for purposes of attempt, it is not necessary that conduct constituting a substantial step actually be capable of causing the crime. *See* ORS 161.425 ("In a prosecution for an attempt, it is no defense that it was impossible to commit the crime which was the object of the attempt where the conduct engaged in by the actor would be a crime if the circumstances were as the actor believed them to be.")[4] Accordingly, the trial court did not err in concluding that defendant took a substantial step toward the crimes of attempted aggravated murder and attempted murder.

Similarly, as to the two counts of witness tampering, a reasonable factfinder could conclude that defendant's conduct constituted a substantial step toward the commission of tampering with the witnesses to his burglary case. Defendant initially told Crowley that he "wanted his witnesses [to his burglary case] to not show up to trial." In his letter to the hit man, defendant wrote that he wanted the two witnesses threatened. Following his instruction to threaten the witnesses, defendant included both of the witness's names, addresses, telephone numbers, and dates of birth. As previously mentioned, the letter also contained information on how the hit man would be paid with the personal property stolen from defendant's father-in-law's home. A reasonable factfinder could conclude that defendant's conduct in instructing the purported hit man to threaten the two witnesses, with the inclusion of specific identifying information about each of the witnesses, and a method of payment, both advanced and provided verification of his criminal purpose; in that way, defendant's conduct was corroborative of his criminal purpose. Thus, the trial court did not err in concluding that defendant took a substantial step

---

[4] In enacting this statute, the Oregon Criminal Law Revision Commission's commentary cites to the Model Penal Code's rationale, namely that,

"(1) criminal purpose has been clearly demonstrated, (2) the actor has gone as far as he could in implementing that purpose, and (3) as a result, the actor's 'dangerousness' is plainly manifested."

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 55, 53 (July 1970) (quoting Model Penal Code § 5.01 comment 31 (Tentative Draft No 10 1960)).

toward inducing the witnesses to offer false testimony or withhold testimony.

Accordingly, because a reasonable factfinder could conclude that defendant's conduct constituted a substantial step toward the commission of aggravated murder, murder, and tampering with a witness, the trial court did not err in denying defendant's motion for judgment of acquittal.

Affirmed.

**SERCOMBE, P. J.,** concurring.

ORS 161.405(1) provides that "[a] person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." To constitute a "substantial step" toward the commission of a crime, "an act must be strongly corroborative of the actor's criminal purpose; that is, the actor's conduct must (1) advance the criminal purpose charged; and (2) provide verification of the existence of that purpose." *State v. Carlton*, 361 Or 29, 45, 388 P3d 1093 (2017). I agree with the majority that, under our case law, defendant's actions in instructing a hypothetical hit man on the details of the crimes and the amount of compensation to be paid for commission of the crimes and delivering those instructions to a courier were a substantial step toward the commission of those crimes. *See State v. Johnson*, 202 Or App 478, 487-89, 123 P3d 304 (2005), *rev den*, 340 Or 158 (2006) (solicitation of crime as a substantial step); *State v. Taylor*, 47 Or 455, 459, 84 P 82 (1906) (mere preparation exceeded when defendant had "done all that he was expected to do").

I question whether this decision and our case law have pushed the substantial step line too far into the territory of conduct that is merely preparatory in nature. Even if actual solicitation of a crime can be a substantial step, how is an *attempted* solicitation equally substantial? It seems to me that conduct that advances a criminal purpose is conduct that makes the crimes more likely to occur. Defendant's delivery of the letter to his cellmate did not make the crimes any more likely, even though the delivery corroborates defendant's intent to commit the crimes.

The test that a defendant has "done all that he was expected to do" in determining whether a substantial step has been taken, while suggested by our precedents, should be re-examined and discarded, and the meaning of "advancing the criminal purpose charged" should be clarified.